**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DANIEL GENEWOO EE, | ) | NO. CV 16-5894-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) | **AND ORDER OF REMAND** |
| | ) | |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied, and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed this action on August 8, 2016, seeking review of the Commissioner's denial of benefits. The parties consented to a Magistrate Judge on September 21, 2016. Plaintiff filed a motion for summary judgment on December 15, 2016. Defendant filed a motion for

summary judgment on January 17, 2017. The Court has taken both motions under submission without oral argument. See L.R. 7-15; "Order," filed August 15, 2016.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, a veteran who served as a tank gunner in Iraq, asserts disability since April 24, 2008 (the date his military service ended) due to lower back problems and post traumatic stress disorder ("PTSD") (Administrative Record ("A.R.") 56-57, 156, 179, 203). An Administrative Law Judge ("ALJ") examined the medical record and heard testimony from Plaintiff, Plaintiff's wife, a medical expert (psychiatrist), and a vocational expert (A.R. 16-32, 37-91, 331-2125).

The ALJ found that Plaintiff suffers from the following severe impairments: PTSD, cognitive disorder, polysubstance abuse in remission, psychosis (not otherwise specified, likely substance induced), obesity, and a lumbar spine disorder (A.R. 19). The ALJ determined that Plaintiff has the residual functional capacity to perform a limited range of medium work (A.R. 21-30).[1] The ALJ found

---

[1] Specifically, the ALJ found:

[T]he claimant can lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; he can stand and/or walk for 8 hours out of an 8-hour workday; he can sit for 8 hours out of an 8-hour workday; he can frequently climb ladders, work at heights, and on uneven terrain; he can frequently bend, stoop, kneel, crouch, and crawl; he can perform simple repetitive tasks; and he is able to have occasional contact with co-workers and incidental contact with the public.
(continued...)

that a person with this capacity could work as a hand packager, hospital cleaner, or industrial cleaner -- jobs existing in significant numbers in the national economy (A.R. 31-32 (adopting vocational expert testimony at A.R. 87-89)). The Appeals Council denied review (A.R. 1-3).

## STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that

---

[1](...continued)
(A.R. 21, 25-30).

```
    detracts from the [administrative] conclusion.
```

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

## DISCUSSION

Plaintiff asserts, inter alia, that the ALJ materially erred in connection with the ALJ's consideration of disability ratings by the Department of Veterans Affairs ("VA"). The Court agrees. Remand for further administrative proceedings is appropriate.

### I. Plaintiff's Post-Military Schooling and Work Attempt

Plaintiff has been attending school during most of the time Plaintiff claims to have been disabled (A.R. 57-58). During 2009-14, Plaintiff received a bachelor's degree in philosophy from Chapman University and a master's degree in social work from the University of Southern California (A.R. 50-51, 57-58).[2] At the administrative

---

[2] A January 9, 2013 VA treatment note indicates that Plaintiff was doing "fair" and had just been accepted to graduate school at USC (A.R. 529-30). His "GAF" (Global Assessment of Functioning) score then was 70, indicating "some mild symptoms" (A.R. 529). See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM") 34 (4th Ed. 2000) (Text Revision) (GAF scale). Clinicians use the GAF scale to rate "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Id. Plaintiff requested a referral to the PTSD clinic (A.R. 529). Plaintiff was there for an initial evaluation, which was necessary for Plaintiff to continue his vocational rehabilitation program (A.R. 529-30). Plaintiff reported he was doing well in school and
(continued...)

hearing, Plaintiff said he had been accepted into chiropractic school for the fall of 2016 (A.R. 67-68).[3]

It appears that Plaintiff's only full-time work attempt since his military discharge was a five-month trial after he finished his master's degree. Plaintiff worked for the Social Security Administration as a claims representative in training from September 2014 through January 20, 2015 (A.R. 51-52, 203-04). Plaintiff was fired after a hospitalization earlier that month for psychosis following the use of methamphetamine (discussed below) (A.R. 52).

**II. Plaintiff's PTSD, Admitted Drug Use and Subsequent Treatment**

Plaintiff reportedly was diagnosed with PTSD in 2011 (A.R. 533; see also 1653-61 ("Social Work Mental Health Assessment/Evaluation" dated in June of 2011 diagnosing chronic PTSD)). Some VA treatment records suggest a PTSD onset long prior to 2011, however. A psychiatry consult dated in June of 2008 stated that Plaintiff had anxiety disorder (not otherwise specified) and indicated a need to "r/o" (rule out) PTSD (A.R. 973-76; see also A.R. 961-69 (traumatic brain injury screening from same time frame noted "suspected/probable" PTSD); A.R. 1900-01 (positive PTSD screening test in June of 2008)). A "Mental Health Initial Assessment-Consult" in January of 2009

---

(...continued)
would be graduating from Chapman University soon (A.R. 530).

[3] Plaintiff's wife testified that she helped Plaintiff obtain his degrees (A.R. 77, 79-80). She opined that Plaintiff would not be able to attend chiropractic school due to Plaintiff's limited ability to handle stress (A.R. 80-81).

5

diagnosed PTSD, "MDD" (major depressive disorder), substance induced psychosis (resolving), and polysubstance dependence (methamphetamine, THC, and alcohol) (A.R. 931-37; see also A.R. 1666-74 (psychiatric evaluations dated in March and April of 2010 diagnosed PTSD and psychosis (not otherwise specified))). "Consult Requests" dating back to June 2008 reflect service-connected disability based on PTSD (A.R. 837-979; see generally A.R. 1653-1902 (Progress Notes for VA mental health treatment from 2008 through 2011); but see A.R. 551-54 (negative PTSD screening test dated in August of 2012)). There are also progress notes for PTSD group therapy from May 2011 through July 2011, and from February 2013 through September 2013 (A.R. 1642-49, 1652-53, 1661-64).[4]

---

[4] Plaintiff also underwent psychiatric treatment at Kaiser for PTSD beginning in late 2014 (A.R. 595-601). Plaintiff then was working for the Social Security Administration and reported that he was experiencing agitation and problems affecting his concentration, as well as PTSD symptoms of nightmares, hypervigilance, exaggerated startle response, insomnia, flashbacks, mild paranoia, and racing thoughts (A.R. 595-96). Plaintiff also reportedly had symptoms of depression and anxiety (A.R. 596). His mental status examination was normal (A.R. 599). A social worker diagnosed generalized anxiety disorder and PTSD, with a note to rule out "Panic Disorder without Agoraphobia" (A.R. 599). His GAF was "60-51" indicating "moderate symptoms," with a highest GAF in the past year of 80 (A.R. 599). Plaintiff reportedly had "moderate" impairment getting along with others, participating in social activities, and performing work or school tasks (A.R. 600). As of December 2, 2014, Plaintiff claimed that he had been sober for one month and had been having issues with his coworkers (A.R. 603). His mental status examination was normal except for anxious mood (A.R. 603-04). A social worker diagnosed adjustment disorder with anxiety and a GAF of "60-51" (A.R. 604). On December 8, 2014, Plaintiff presented for a psychiatric evaluation with reports of anxiety and insomnia (A.R. 577-79, 606). He said he stopped drinking alcohol in the last two months because his wife asked him to stop (A.R. 606). Plaintiff said he
(continued...)

At the hearing before the ALJ, Plaintiff admitted having some issues with alcohol and also admitted to having used methamphetamine twice (A.R. 64). Plaintiff testified that he "occasionally" drank alcohol "on the weekend and stuff" between 2008 and 2015 (A.R. 65). Plaintiff claimed that he had stopped drinking completely when he began his job with the Social Security Administration (A.R. 65).

Plaintiff said he first used methamphetamine in 2008 to self-medicate when he got out of the military, but used "a little too much" and ending up in a hospital psychiatric ward (A.R. 64-65).[5] Plaintiff

///
///
///
///

---

(...continued) had to work and do a large part of the household chores (A.R. 607). At that time, Plaintiff's wife was pregnant and attending nursing school and they had a six month old baby (A.R. 607). On examination, Plaintiff's mood was anxious and his affect was restricted (A.R. 607). The psychiatrist diagnosed PTSD, anxiety, and insomnia, and prescribed Ativan, Zoloft, Desyrel, and Flexeril (A.R. 608-09).

[5] On December 12, 2008, Plaintiff presented to the emergency room with a methamphetamine overdose (A.R. 348-68). According to the "Emergency Department Reports," Plaintiff had a "history of methamphetamine abuse" and reported using "a lot" of crystal meth "daily" (A.R. 350). Plaintiff denied any alcohol use (A.R. 350). Urinalysis was positive for amphetamines (A.R. 351; see also A.R. 799-804 (drug testing showed positive results for methamphetamine and benzodiazepines on December 15, 2008)). Plaintiff was given Haldol and Ativan for "drug-induced anxiety" and discharged with instructions to follow up at the VA (A.R. 352). Plaintiff was admitted to the VA for a psychiatric hold from December 15-18, 2008, for methamphetamine induced psychosis (A.R. 833-36; see also A.R. 1795-1856 (Progress Notes re same)).

said he did not use methamphetamine again until 2015 (A.R. 64, 66).[6]

Plaintiff then sought treatment from the VA (A.R. 64).[7]

///

///

///

///

---

[6] On January 6, 2015, Plaintiff was hospitalized for hallucinations and aggressive behavior (A.R. 331-47, 354-60, 367, 369-89, 573-74, 698-737). Plaintiff reported a "history of PTSD and amphetamine abuse and dependence" (A.R. 373). He was observed to have an altered mental status (psychosis and agitation) due to amphetamine or related drug abuse, anxiety disorder, depression, and polysubstance abuse (A.R. 333, 340). Urinalysis was positive for amphetamine/methamphetamine and there is mention that Plaintiff "apparently uses PCP" (A.R. 359, 370-71, 380, 388, 704). He was diagnosed with psychosis (not otherwise specified) and a history of PTSD (A.R. 373). His GAF was 35 at admission (A.R. 373). Plaintiff admitted to a "significant period" of time when he was using alcohol excessively, as supposedly confirmed by Plaintiff's wife (A.R. 713). Plaintiff denied using any other drugs (A.R. 713).

Plaintiff began attending group therapy on January 13, 2015 (A.R. 610). He reportedly was doing better after the recent hospitalization, and said he was looking forward to returning to work in one week (A.R. 610). Plaintiff denied any substance abuse (A.R. 610). A psychologist diagnosed schizoaffective disorder (A.R. 610-11).

[7] VA records indicate diagnoses of, <u>inter alia</u>, PTSD, addiction, a psychotic disorder and methamphetamine dependence (A.R. 390-96). Plaintiff had an inpatient psychiatric ward stay from March 11, 2015 through March 16, 2015 for psychosis (likely substance induced), stimulant use disorder, "ETOH" (alcohol) use disorder, and PTSD (A.R. 399-527; <u>see also</u> A.R. 887-95, 910-16 (psychiatric consultant's reports at intake)). His GAF was 50 (A.R. 406). Plaintiff acknowledged his recent methamphetamine use, supposedly beginning in January when he lost his job, and Plaintiff claimed he had ongoing PTSD (A.R. 400-01, 472, 484). Plaintiff reportedly "binges" alcohol and had at least two DUIs, with "intermittent attempts to remain sober" (A.R. 401). Plaintiff was discharged with trials for Risperdal, Sertraline, and Hydroxyzine (A.R. 405).

Plaintiff said he was in an inpatient treatment program for combat trauma PTSD and substance abuse from March or April of 2015 until November of 2015 (A.R. 66-67).[8] Plaintiff indicated he thought the treatment went "pretty well" (A.R. 66-67; see also A.R. 1941-42, 1958-63, 1967-72 (VA "Discharge Summary" and related notes from inpatient stay indicating that Plaintiff successfully completed the program and was discharged with a final diagnosis of amphetamine dependence and PTSD)). Plaintiff said he was seeking outpatient treatment at the time of the hearing before the ALJ (A.R. 67; see also A.R. 1959).

///
///
///
///

---

[8] On March 5, 2015, Plaintiff reported to his doctor that he had started using methamphetamine in January and last used two days before the appointment (March 3) (A.R. 570-72, 614). On examination, Plaintiff's mood was depressed and his affect was restricted (A.R. 615). Plaintiff was diagnosed with anxiety, a drug induced mental disorder and PTSD, and was prescribed Seroquel, Klonopin, Zoloft, Flexeril, and Desyrel (A.R. 615-16, 624). The next note indicates that on March 23, 2015, Plaintiff was admitted to the VA hospital for inpatient psychiatric treatment following methamphetamine use and paranoia (A.R. 618; see also A.R. 830-33, 980-1632, 1947-2097 (VA inpatient treatment records)).

The doctor from Kaiser continued to treat Plaintiff with medication follow-up appointments during Plaintiff's inpatient VA treatment (A.R. 566-73, 620-29). On May 1, 2015, Plaintiff reported that he was sober (A.R. 566-68, 620; see also A.R. 785-99, 804-29 (negative drug screens from March 2015 through August 2015)). Plaintiff was prescribed Minipress, Zoloft, Risperdal, and Benadryl (A.R. 620-21, 624-27). On examination, Plaintiff's mood was anxious and his affect was restricted (A.R. 621). Plaintiff was diagnosed with PTSD, major depressive disorder (recurrent, mild), and insomnia (A.R. 621).

9

## III. The VA Disability Rating and the ALJ's Consideration Thereof

The VA records contain "Consult Requests" for Plaintiff's service connected/related disability ratings from June 2008 through July 2008, December 2008 through January 2009, March 2010, December 2013, and March 2015 through August 2015. See A.R. 837-979 ("Consult Requests" including related medical test results and observations).[9] The overall disability ratings ranged from 80 to 100 percent, with a 100 percent disability rating for PTSD and lesser ratings for other conditions (i.e., tinnitus, sinusitis, and limited flexion of the knee) (A.R. 837-979).

On September 8, 2015, the VA issued a "Rating Decision" and awarded increased disability benefits (A.R. 179-85; see also A.R. 172-78 (accompanying letter); A.R. 249-50 (letter summarizing Plaintiff's VA benefits)). The VA found Plaintiff has an overall or combined disability rating of 90 percent based on chronic sinusitis, tinnitus, allergic rhinitis, PTSD with insomnia, alcohol dependence, and amphetamine abuse (A.R. 173-74, 179-85). The VA recognized Plaintiff's "entitlement to individual unemployability" (at a 100

---

[9] The testing included a "Physical Medicine Rehab Consult" dated June 6, 2015 (A.R. 853-55), a prosthetics request for lower back pain from April 2015 (A.R. 855-57), an optometry consult from June 2015 (A.R. 860-64), a "neurobehavior" consult from July 2015 (A.R. 867-72), an audiology consult from May 2015 (A.R. 878-79), psychiatry consults from March 2015 (A.R. 887-95, 910-16), a "disability exam" from December 2013 (A.R. 916-17), a mental health assessment from January 2009 (A.R. 931-37), a psychiatry consult from December 2008 (A.R. 941-46), an optometry consult from July 2008 (A.R. 954-56), a traumatic brain injury screening from June 2008 (A.R. 959-70), and a psychiatry consult from June 2008 (A.R. 972-77).

percent rate) effective October 1, 2015, because Plaintiff was "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities" (A.R. 174, 181, 249). The VA detailed the objective and subjective evidence assertedly supporting its determination. See A.R. 180-84.

At the administrative hearing, Plaintiff mentioned that the VA had rated him as "unemployable" (A.R. 67). The ALJ responded that the VA's determination of unemployability is "different" than the Social Security Administration's determination (A.R. 67). In the ensuing adverse decision, the ALJ mentioned that he had read the "Veterans Affair Rating Decision dated September 8, 2015," but gave "the VA determination little weight" "based on the objective evidence detailed above" (A.R. 30). The ALJ did not discuss the contents of the Rating Decision or otherwise explain the reason(s) for giving only "little weight" to the VA's determination(s) (A.R. 30).[10]

///
///

---

[10] The ALJ also noted that Plaintiff's VA case manager provided a letter dated September 7, 2015, reporting Plaintiff's subjective complaints and submitting a copy of Plaintiff's VA Rating Decision (A.R. 26-27 (citing A.R. 1903-05)). Plaintiff then was in the VA inpatient treatment program and reportedly had been sober since March (A.R. 1903; see also A.R. 785-99, 804-29 (negative drug screens from March 2015 through August 2015)). The ALJ gave the case manager's letter "little weight" because: (1) it "only repeated the information in the [VA] rating and the claimant's subjective complaints"; (2) did not make an independent assessment; (3) was "inconsistent with or contradicted by objective evidence and medical opinions," "mirror[ed] the account of the claimant," and reported facts of which the case manager had no personal knowledge; and (4) the case manager purportedly was "engaging in advocacy" (A.R. 26-27).

**IV. The ALJ Materially Erred by Not Stating Sufficient Reasons for Failing to Give Great Weight to the VA's Determinations.**

An ALJ must always consider a VA rating of disability and must ordinarily give "great weight" to such a rating. See McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) ("McCartey"). An ALJ may give "less weight" to a VA rating of disability only if the ALJ states "persuasive, specific, valid reasons for doing so that are supported by the record." Id. (citation omitted); see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 695 (9th Cir. 2009) ("Valentine") (reaffirming same). An ALJ's rejection of a VA disability rating on the ground that the VA inquiry and the Social Security Administration inquiry are "different" runs "afoul" of McCartey's requirements. Valentine, 574 F.3d at 695 (McCartey "explicitly relied on the marked similarity between the disability programs of the VA and of the SSA") (citations and quotations omitted).

Although the ALJ cited McCartey's requirements, the ALJ failed to state any "persuasive, specific, valid reasons" for giving less than great weight to the Rating Decision, and failed to explain adequately how the various VA determinations (not just September 8, 2015 determination) may have influenced the ALJ's residual functional capacity determination. The ALJ stated only:

> . . . I have read and considered the [VA] Rating Decision dated September 8, 2015 [A.R. 172-85, 249-50]. In the Ninth Circuit, because the VA and Social Security Administration

12

1       disability programs are similar, an [ALJ] must ordinarily
2       give great weight to the VA determination of disability
3       [citing McCartey v. Massanari]. However, because the VA and
4       SSA criteria for determining disability are not identical,
5       an [ALJ] may give less weight to a VA disability rating if
6       there are persuasive, specific, valid reasons for doing so
7       that are supported by the record [citation omitted]. <u>Thus,</u>
8       <u>in this case, I give the VA determination little weight</u>
9       <u>based on the objective evidence detailed above.</u>

11 (A.R. 30 (emphasis added)). The ALJ's unspecific reference to "the
12 objective evidence detailed above" is not a "persuasive, specific,
13 [or] valid" reason to reject the VA ratings. While the ALJ's
14 discussion of the medical record is lengthy (see A.R. 23-30), the
15 discussion fails to pinpoint any specific medical findings that
16 supposedly contradict the VA's disability determinations. See Young
17 v. Colvin, 2016 WL 1117774, at *3-4 (E.D. Cal. Mar. 22, 2016) (finding
18 inadequate an ALJ's rejection of a VA rating where the ALJ generally
19 referenced the lack of "sufficient objective medical support").

21     As potential reasons to reject the VA's disability
22 determinations, Defendant suggests: (1) Plaintiff's receipt of a
23 master's degree during the alleged disability period; and (2) the VA's
24 alleged failure to consider whether substance abuse was a contributing
25 factor. See Def.'s Motion, pp. 1-2. However, the Court "cannot
26 affirm the decision of an agency on a ground that the agency did not
27 invoke in making its decision." Pinto v. Massanari, 249 F.3d 840, 847
28 ///

(9th Cir. 2001).[11]  On the present record, the ALJ failed to state sufficient reasons for discounting the detailed VA disability determinations.

The Court is unable to conclude that the ALJ's error was harmless.  See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error "is harmless where it is inconsequential to the ultimate nondisability determination") (citations and quotations omitted).  The ALJ based the mental residual functional capacity determination in part on the opinion of the consultative examining psychologist (A.R. 26).  This psychologist did not review any of Plaintiff's voluminous medical records (including the VA disability ratings and supporting medical evidence) (A.R. 2110).  The non-examining state agency physicians, on whom the ALJ also partially relied, rendered their opinions before the VA made its Rating Decision, and thus did not have the benefit of reviewing the Rating Decision (A.R. 102).  The medical expert, who apparently did review the Rating Decision, merely stated conclusory agreement with the consultative psychologist's opinion concerning Plaintiff's mental residual functional capacity (A.R. 74-75) (of the consultative psychologist, the medical expert stated, "I

---

[11] Plaintiff's VA treating psychiatrist, Dr. Mark Barad, observed that Plaintiff "still has psychotic symptomatology after [eight] months of sobriety and the use of neuroleptic medications, suggesting a primary psychotic process" and "substantial PTSD and mood symptoms" (A.R. 2125).  Under these circumstances, the VA's alleged failure to factor out substance abuse might not be a "persuasive" reason to discount the VA's Rating Decision.  See McKee v. Commissioner, 446 Fed. App'x 36, 38 (9th Cir. 2011) ("The ALJ's reason for rejecting the VA's disability rating, 'because substance abuse clearly is contributory' is not '"persuasive' or 'valid,' because the record shows that the rating was made while [the claimant] was sober.").

think obviously the doctor, you know, conducted a face-to-face interview, you know, certainly has a good basis from which to base a determination"). None of the physicians on whom the ALJ relied appear to have considered adequately those medical records concerning Plaintiff's combined physical and mental limitations which informed the VA's ratings determinations.

**V.    Remand for Further Administrative Proceedings is Appropriate.**

Remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2010); see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Treichler v. Commissioner, 775 F.3d 1090, 1101 n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014) (court will credit-as-true medical opinion evidence only where, inter alia, "the record has been fully developed and further administrative proceedings would serve no useful purpose"); Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the

record").

There remain significant unanswered questions in the present record. For example, even if the VA ratings are given great weight,[12] there still would be the issue of precisely when Plaintiff became disabled. The ALJ addressed only the most recent VA ratings (done in 2015). Plaintiff appears to have had disability determinations dating back to June of 2008. See A.R. 970-72.

**CONCLUSION**

For all of the foregoing reasons,[13] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 15, 2017.

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[12] On remand, the ALJ must either give the ratings "great weight" or state "persuasive, specific, valid reasons" for not doing so. See McCartey, 298 F.3d at 1076.

[13] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.